Our second case for argument is Seventh Avenue v. Shaft International. Shaft, you know, Shaft International. Let's get this right. Mr. Siefert. Good morning, Your Honors. To please the Court, I'm Joseph Siefert, appearing on behalf of Shaft International, the appellant. This is the first time that I'm appearing before any court of appeals, any appellate court in my career, so I'd like to apologize in advance for any inadequacies during my presentation. I'm going to focus my time primarily on one particular issue. This issue for my client is an equitable one. It's about the equities of my client having his case heard on the merits before the court. If my client is not able to have his case heard and heard on the merits... That, of course, is the problem. First, we're not dealing with the merits. That was resolved by a consent judgment. But second, your client was invited to participate and just didn't bother to show up. Now, I understand your argument to be that there was an Alphonse and Gaston problem between you and a lawyer in New Jersey. But why should that prevent the district court from entering a decision in favor of Seventh Avenue? If your side of the case did not have its act in gear, why does that redound to the detriment of your adversary? Because, Your Honor, if my client is not able to have his case heard in the front of the district court as to the merits of the issue... No, it was able to have its case heard. It just didn't bother to show up. That's the problem. There wasn't any lack of notice. It's apparently conceded that you and the New Jersey lawyer received notice. No one appeared at the time set for hearing. Why is that excusable behavior? You're not going to like to hear this, but we keep saying that if the lawyers for one side foul up... ...the client's remedy is by malpractice action against the lawyers, not to restart the case with respect to the adversary. I understand that, Your Honor. But may I say, Your Honor, that the attorneys on the other side... ...although they knew that I was local representative, local counsel for Schaaf... ...they never once communicated with me about this content motion. I knew nothing about it. When it was filed, I was in Europe. I was not here. My staff that was supposed to be watching for my cases... ...had an emergency case in Soviet Georgia regarding his wife and had to leave on a short notice. When I returned, I returned after the motion was filed. I had almost 700 emails. I did not know about this case. The New Jersey attorneys apparently did. I don't know what happened there, except that I do know that there was a total breakdown in communication. We have always appeared at the hearings. My client had always been diligent... That's the problem. You've always appeared at the hearings except several in a row in connection with his motion. That's not always. Your Honor, I'm only aware of one hearing that we did not attend. And I believe that there is excusable neglect as to why we did not attend. In addition to the excusable neglect regarding the other prongs that this court has established... ...for determining whether default judgment should be reopened... This is not a default judgment. This isn't the merits. I wish you would at least get this straight. The merits were resolved by a consent decree. What we are dealing with is a motion to hold your client in contempt for violating the consent decree. It is not the merits of the case. But my client maintains, Your Honor, that he is not in contempt. He maintains that he followed the letter of the law regarding that consent agreement. That the issues that have been raised by the appellee are not true. That he did everything within his power to comply. And as a result of not being able to present his case before the judge... ...a grossly, a huge penalty of $34,000 has been assessed against him for attorney's fees. Which to us is a gross miscarriage of justice. My client did everything in good faith to honor that consent decree. And had he been able to present that in front of the court... ...we would have shown the court that he did, in good faith, honor that. And he had no control over local retailers that he does not own and cannot control legally in any fashion. They had some jackets that were in old, in inventory. Mr. Sievert, can I ask you one just brief question? Am I right that on June 7th, 2017, that's when the court held the second of the two hearings? The hearings that led to the order that we're here on today? I think it was June 7th, 2007. And I think that was the day that the, what's his name, Herman, the New Jersey lawyer, am I correct there? Yes, Attorney Herman. The New Jersey lawyer did not, didn't show up, you know, to the hearing. Although he's the one purportedly responsible for handling the matter, in light of what you opened with. I mean, how did the district court, you know, given, I think that alone, abuse its discretion here? Would you repeat the date again, Your Honor, which date you're referring to? Whenever the hearing was, the hearing that ultimately took place, I think it was on June 7th. And I'm just looking at the date in the first document in your appendix, in the blue brief. There was a hearing in February. That one he did not show up at. No, no, no, I know that. But he also didn't show up on the one in June. I appeared at the hearings after the missed hearing in February. I appeared on behalf of Schaaf International. One hearing I appeared by phone. The court had scheduled a hearing. That's the one in May. The court had scheduled a hearing that was in direct conflict with another hearing they had in circuit court. The circuit court had given me a break in order to call it was a telephonic hearing. And I did contact the court. The judge was not happy, but it was not something that I could control. I guess my only observation is that in reading what the district court wrote, the district court got to the point of just being exasperated. That nobody was showing up, nobody was attending to the matter as you would expect a corporate defendant to attend to the matter. And that's what led, you know, to the contempt order. I understand that, and I understand that she was exasperated. And so you have to, the only way to prevail here is to show under a very difficult standard of review that that was an abuse of discretion. Your Honor, I believe it was an abuse of discretion because she outright refused to consider the merits of our arguments. She outright refused to consider the fact that we very promptly upon realizing that the hearing had been missed, that we very promptly filed a motion and asked to get the information in front of the court. She admitted in court that she did not consider any of the merits of the argument. She only was concerned about the fact that the February 19th, let me check, that the February 14th hearing had been missed. When I tried to explain that to the court, she didn't seem to want to have, she didn't want to hear much about the situation regarding the other attorney. There was a complete mix up in communication with the law firm in New Jersey. Had I any idea that there was not going to be representation at that hearing, I would have been there. This was not willful misconduct. There was nothing in this case where we deliberately disregarded deadlines or it was an ordinary lapse of diligence. This is not simple neglect. This was a complicated mistake between a law firm in New Jersey, my being out of the country, and a miscommunication. My client believed that his firm was taking care of it. He called me as soon as that hearing, he had found out that they were not at that hearing, he immediately called me within hours. I immediately got on top of it and I immediately went to work and contacted the court and filed whatever I was ordered to file and filed a motion. I filed multiple documents and I tried to explain to the court that there had been simply a lapse in communication and that we are trying and willfully trying in good faith to participate in the court process. And if we're not allowed to do that, it is a gross miscarriage of justice for my client because my client is innocent in this contempt matter. If this is not heard, if the issue of contempt is not heard on the merits, then my client will be penalized by many thousands of dollars for something that he did not do. This court has always found, or has always held in the past, that there has been a strong preference for hearing matters on the merits and allowing default judgments only to be employed in extreme situations or when less drastic sanctions are unavailing. It's also been this court's determination that the default judgment should be vacated where judgments result in an honest mistake. This is an honest mistake. There is no dishonesty here, there is no attempt to fool the system or to do anything other but in good faith comply with the rules and comply with the process. Out of fairness, vacating the default judgment should be liberally construed. It's my understanding that that's how this court has also held in the past. That cases should be heard before judges and not determined in default judgments. There was no default judgment in this case, counsel. You really need to describe what happened rather than referring to cases about some other kind of situation. This case was resolved on the merits by a consent judgment. There was then a dispute about contempt of court. There was no default judgment. What I mean by that, your honor, is that she found my client in default of the contempt motion. I don't know how else to phrase it, your honor. But he wasn't there and she granted judgment on the contempt. I only can call it default, I don't know what else to use. I'm sorry. But by basing her decision solely on the excusable neglect argument and failing to look at the other two prongs at all, I believe that there was no attempt at a liberal construction and it did not comply with the court's preference for hearing cases on the issues. I believe that the court should have considered Schaaf's extremely quick action addressing this once it was realized that the hearing had been missed and their meritorious claims that they were acting in good faith, that the allegations made by the appellee were not true, and that they had meritorious defenses. It's our position that the judgment issued by the judge in this case and the contempt motion should be set aside where a moving party acts with promptness and alleges meritorious defenses, and again, where the default has not been willful. The appellee is not prejudiced in any way in this. Nor do they argue that. No, but they have not been harmed by this. They've not been prejudiced by this. There is nothing to upset the balance by allowing this case of the contempt matter to be heard by the judge. Only that my client will have had a chance to address their complaints, show the court why they're not true, why he has complied in good faith, and ask that justice be served in his case. If he is not allowed to appear in front of the judge and explain these things, then it isn't a question of justice for him. It's a question of guilt by default. I think I'll use the remainder of my time for rebuttal. Mm-hmm. Sir, the counsel. Mr. Scheller. Good morning, Your Honor. May it please the court, John Scheller of Michael Best on behalf of Seventh Avenue. Your Honors, the district court acted well within its discretion in entering a default as well as in awarding fees. As to the default, there are a few important things to note. The district court considered all of the facts. Judge Pepper recited all of these facts, frankly, from the top of her head at the June 7th hearing, and she asked counsel, do you agree? Schaff's counsel agreed, did not dispute her recitation of the facts. And those facts show that Schaff simply did not comply with the terms of the consent judgment. Even by March 3rd, well after we moved for contempt, Seventh Avenue was still able to purchase jackets, infringing jackets, that were to be, the sales would have been ceased as of December 31st, 2016. Moreover, counsel did not act quickly in responding to the default. Instead, counsel and Schaff, the record shows that counsel and Schaff knew about the hearing before it occurred on January 30th. And yet, nothing was filed with the court until March 2nd, over a month later. Schaff also did not comply with the consent judgment because Schaff's principal did not provide an affidavit as was required until March 2nd. Schaff has not shown good cause, or quick action, or a meritorious defense. In fact, with respect to good cause, Schaff admits there was miscommunication between counsel. And under Pretzel and Stover v. Imperial Adjusters, this court's decision at 28F3-4246, miscommunication between a counsel is insufficient to establish good cause. With respect to quick action, as I mentioned, Schaff did not respond quickly. Schaff knew about the hearing on contempt, never attended. And they didn't respond until well after the hearing. They only acted after there was an order to show cause. And again, that was Docket 22, R22, where they first responded on March 2nd. This is five weeks after the notice of the hearing. With respect to the meritorious defense, Schaff did not tell retailers to stop selling jackets. And as I said, 7th Avenue was able to purchase jackets on March 3rd. And again, there was no affidavit until March. Finally, with respect to fees, the district court was well within its discretion in awarding fees here. Not only was there evidence of actual rates that were charged to the client, there was also evidence of a third party attesting to our rates that were reasonable and in line with the market, and as well as my own affidavit in terms of establishing the rates at our firm for litigation. Schaff argues that we filed simply a four-page motion, but as detailed at pages 27 and 28 of our brief, there were numerous matters that were required here, necessitated by Schaff's inaction. We had to attend three hearings, including one in person, because the court ordered it following the missed hearing and then the hearing that Schaff's counsel abruptly ended. And finally, as stated in our brief, Schaff also has waived arguments with respect to specific entries, because it did not identify specific entries or work objected to in the district court. Your Honor, we ask that you affirm the judgment of the district court. Thank you, counsel. Anything further? You have a minute and a half. Better than 12 seconds. Thank you. It's very quickly, Your Honors. Counsel stated that the district court considered all the facts, but the district judge herself said she did not. She stated that she was not going to consider any of the merits of the argument that we had to make. She only considered and was actually confused about why there was a miscommunication between attorneys. Counsel raises the issue of jackets being sold after the fact. That's an issue of argument that needed to be tried before the judge. We deny that Schaff had any knowledge or any complicity in the selling of any of those jackets. It was out of Schaff's control. They don't own the retailers. They don't control the retailers. And those jackets in question were jackets that were sold prior to this action taking place and were the legal property of those retailers. Schaff tried to get them back. Some of them were missed. Some of them were inadvertently sold later by retailers, which are not controlled by my client. But that isn't the issue here today. The issue here today is whether or not those issues should have been discussed before the trier of fact, in this case the district judge. Counsel did, in fact, act quickly. I did not know of the hearing. I was out of the country after I came back, and I realized that Counsel, if I understand the district court's opinion, you returned from Europe on January 19th, and the hearing was set for February 14th. That's essentially four weeks after your return. Are those dates correct? The dates are correct, Your Honor, but the fact... Well, so you were not only in this country. You'd been in this country for quite long enough to catch up on paperwork. If I may answer a question, Your Honor, my time is up. As long as we're asking, you can answer. Thank you. Your Honor, when I came back to the United States, I had almost 700 emails. We're notified by email. I did not see that notice. I also had, prior to this case, I had been speaking routinely with local counsel. They would call me and notify me. In this particular case, and I don't know why, they never contacted me, never notified me, never emailed me. I had zero communication from them. They were regularly communicating with a New Jersey attorney and not me. Thank you, Counsel. Thank you.